### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION
#### www.flsb.uscourts.gov

In re:                                                    Case No.: 18-14162-EPK
                                                          Chapter 7
**FORTE INTERACTIVE, INC.,**

    **Debtor.**

_____/

**DEBORAH C. MENOTTE, not individually,**
**but as Chapter 7 Trustee for the**                      ADV. NO. _____
**bankruptcy estate of the Debtor,**
**FORTE INTERACTIVE, INC.,**

    **Plaintiff,**

**vs**

**SVE, LLC, a California limited liability company;**
**GREG RICHARDS;DEBBIE RICHARDS; and**
**I AM ATHLETE, LLC, a California limited**
**liability company**

    **Defendants.**

_____/

### COMPLAINT FOR RESCISSION OF CONTRACT, FOR UNJUST ENRICHMENT, CONVERSION, AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER, AND BREACH OF CONTRACT

The Plaintiff, Deborah C. Menotte ("Trustee"), as Chapter 7 Trustee of the Debtor, Forte

Interactive, Inc. ("Forte" and/or "Debtor"), by and through counsel, and pursuant to Rule 7001,

Federal Rules of Bankruptcy Procedure, sues the Defendants, **SVE, LLC**, a California limited

liability company, **Greg Richards, Debbie Richards,** and **I Am Athlete, LLC** (collectively, the

"Defendants" or each, individually, a "Defendant") for damages and alleges, as follows:

### THE PARTIES, JURISDICTION AND VENUE

    1.    This is an action by Plaintiff to avoid and recover fraudulent and/or avoidable

transfers to Defendants under 11 U.S.C. §§ 544, 548, and 550 of the Bankruptcy Code and applicable state law, or in the alternative, for rescission and return of amounts paid under contract, unjust enrichment, and conversion.

2.      The Plaintiff is the duly appointed and acting Chapter 7 trustee of the Debtor's Estate (hereinafter, the "Estate"), and, in that capacity, has the authority to prosecute this adversary proceeding.

3.      Defendant, SVE, LLC ("SVE") is a California limited liability company, duly formed and existing under the laws of the state of California.

4.      At all times material hereto, Greg Richards owned 50% of SVE, LLC, and his wife, Debbie Richards owned 50% of SVE, LLC.

5.      At all times material hereto, Greg Richards and Debbie Richards were officers, directors, and/or control persons of SVE, LLC.

6.      Defendant, I Am Athlete, LLC a/k/a, d/b/a imAthlete ("IMAthlete") is a California limited liability company.

7.      At all times material hereto, Jeff Matlow was and has been CEO and/or a control person of IMAthlete.

8.      This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

9.      This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (H), and (O) for which the Court is authorized to hear and determine all matters.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409 as this adversary proceeding arises in or relates to the Chapter 7 bankruptcy proceeding of the Debtor pending in this District.

11.     All conditions precedent to the filing of this action have been performed, waived, satisfied or have occurred.

## FACTS COMMON TO ALL COUNTS[1]

12.     Forte was formed on September 9, 1999 by Clay Williams and Rob Anderson.

13.     Its shareholders were Clay Williams, his wife Marianna Williams, and Rob Anderson.

14.     Forte was a software development company specializing in web based software applications and web application development, primarily for races and other athletic events.

15.     Most of Forte's clients were non-profit organizations.

16.     In or around 2005, a significant portion of Forte's business became more specialized and focused on endurance events. Specifically, the Debtor developed software called RacePartner, which was an event registration platform and service used to sell tickets for, register, and track participants in, various athletic endurance events.

17.     Forte also used RacePartner as a d/b/a.

18.     Forte used two different financial models to generate revenue.

19.     In one model, used by Forte most often, Forte acted as the merchant for selling tickets to events, collecting ticket revenue from participants and later remitting the ticket revenue to its client (the race organizer) less a fee.

20.     Forte's fee for its service was approximately $1.50 plus 6.5% of the transaction, on average.

---

[1] In compliance with Fed. R. Bankr. P. 7020 regarding the joinder of multiple parties in a single action, the claims asserted against the named defendants arise out of the same series of transactions and involve common issues of law and fact.

21.     In the other model, Forte simply allowed the race organizer to use its software and the race organizer or owner collected its ticket revenue through its own merchant account, with Forte to remit an invoice to the client for its fee.

22.     From 2005 on, the RacePartner software "fueled rather explosive growth," according to Clay Williams, allowing the Debtor to exploit a unique market niche.

23.     SVE, LLC was formed in 2015 under the laws of the state of California by Greg and Debbie Richards.

24.     SVE's predecessor was South Valley Endurance, which was formed in 2009 by Greg and Debbie Richards.

25.     SVE, LLC provided event/race timing services to event organizers and participants.

26.     In 2010, SVE developed an event registration platform, similar to Racepartner, but a smaller version, called Racemine.

27.     In February 2016, Greg and Debbie Richards approached a salesperson of the Debtor about purchasing Racemine.

28.      Subsequently, on or about September 28, 2016, Greg Richards, on behalf of SVE, and the Debtor entered a letter of intent setting forth the terms of the purchase by the Debtor of Racemine, and all assets related to Racemine (collectively, the "Racemine Assets"), including business, publication products, intellectual property, trademarks, copyrights, customers, customer contracts, and goodwill (the "Contract").   A copy of the Contract is attached hereto as Exhibit "A".

29.     Pursuant to the Contract, the Debtor was to make an initial one-time payment of $125,000 at the closing of the sale.

30.     The Debtor did in fact make its initial payment of $125,000 to SVE (via a $50,000 deposit on August 15, 2016, plus three $25,000 payments on August 15, 2016, September 11, 2016, and September 30, 2106, respectively).

31.     In or about November 2016, SVE transferred the Racemine software and customer information over to the Debtor's servers for the Debtor to take over Racemine's event registration work.

32.     Greg Richards has testified that the Debtor then became the owner of the Racemine Assets.

33.     The Contract also provided that the Debtor would make quarterly distributions to SVE of operating profits, which payments would not be less than $25,000 each.

34.     The Debtor made a $25,000 payment in April 2017, another in July 2017, and another in October 2017.

35.     The Debtor also made payments to SVE of amounts between $4,750 and $6,700 per month, totaling approximately $144,000) for maintenance and labor services provided by SVE relating to the software.

36.     The Contract did not provide for SVE to retain any security or collateral, nor for any remedies or self-help to SVE.

37.     After the sale and transfer to the Debtor, SVE continued to do race timing functions, often for the same events.

38.     In or about December 2017, the Debtor, through Kirk St. Johns approached a different company named IMAthlete about a merger.

39.     Discussions and meetings between the Debtor and IMAthlete about a merger with or purchase of Forte followed, including, a meeting wherein Jeff Matlow, CEO of IMAthlete, flew

from California to the Debtor's premises to meet with the Debtor's president and discuss the Debtor's software platform and assets, which included Racemine and Racepartner.

40.   Pursuant to these discussions and meetings, IMAthlete signed a Mutual Non-Disclosure Agreement in December 2017, agreeing to hold the Debtor's proprietary information obtained or reviewed in these meetings, including the Debtor's Racemine and Racepartner software and customers, in confidence and not to make any use whatsoever of the Debtor's proprietary information at any time.  A copy of the Mutual Non-Disclosure Agreement is attached hereto as Exhibit "B".

41.   Meanwhile, sometime between November 2017 and February 2018, Greg and Debbie Richards came to learn of certain Forte clients, including race organizers, that the Debtor allegedly had not paid for certain events.

42.   On or about February 22, 2018, Greg and Debbie Richards and SVE logged in to the Debtor's servers, took the Racemine software and customer information from the Debtor, "shut it down", and put it back on SVE servers.

43.   Subsequently, SVE and Greg and Debbie Richards sold the Racemine software and customer list and information, which they had converted from the Debtor, to IMAthlete, which was aware, through its meeting at the Debtor's premises and its execution of the Mutual Non-Disclosure Agreement, that the Racemine software and customers belonged to the Debtor, and not to SVE or Greg and Debbie Richards.

**COUNT I**
**RESCISSION AND/OR DECLARATORY RELIEF DECLARING**
**THAT DEFENDANT, SVE, LLC, RESCINDED THE CONTRACT,  AND FOR**
**THE RESTORATION TO THE ESTATE OF THE FUNDS PAID BY THE DEBTOR**

**(Against SVE)**

44.     The Plaintiff restates and re-alleges paragraphs 1 through 43 above as if specifically set forth herein.

45.     The relationship of the parties is such that the parties were in contractual privity for the purchase and sale of the Racemine software and

46.     The Contract created a contract for the purchase and sale of the Racemine software.

47.     As set forth above, the Contract did not provide for any security or collateral to be given to SVE, nor did it provide for self-help or recovery of the software.

48.     The actions of SVE, through Greg Richards and Debbie Richards, in taking back the Racemine software are consistent with its rescission of the Agreement.

49.     Given that SVE has undone the Contract and taken back the Racemine software being sold thereunder, the benefit that it has given under the Contract has been restored to it.

50.     Accordingly, the benefit paid to SVE by the Debtor under the Contract, totaling at least $200,000.00, should be restored to the estate.

51.     The Plaintiff has no adequate remedy at law other than rescission because the Defendant has already taken steps to rescind the Contract, notifying the Debtor of the rescission by taking back the benefit of the bargain.  Likewise, at this time, upon information and belief, the Defendant, SVE no longer has the Racemine software, nor can the estate use the software.

WHEREFORE, the Plaintiff, Deborah C. Menotte, Trustee in Bankruptcy for Forte Interactive, Inc., respectfully demands that this Court enter judgment in her favor and against Defendant, SVE, LLC, for rescission, determining that the Defendant has already rescinded the Contract and has already taken back the benefit of the Contract, and granting a monetary award to the Plaintiff and against SVE, LLC in the amount of at least two hundred thousand dollars ($200,000.00) constituting a restoration to the Estate of the funds paid by the Debtor for the

Racemine software and customer information that the Defendant took back, plus prejudgment interest and costs and award all other relief the Court deems just and proper.

## COUNT II
## UNJUST ENRICHMENT

### (Against SVE, Greg Richards, and Debbie Richards)

52.     The Plaintiff restates and re-alleges paragraphs 1 through 43 above as if specifically set forth herein.

53.     The Debtor conferred a benefit on SVE, Greg Richards, and Debbie Richards when it paid the $200,000 under the Contract for the purchase of the Racemine software and customer information.

54.     The Defendants, SVE, Greg Richards, and Debbie Richards, took the benefit that the Debtor was to receive under the Contract back when they took the Racemine software, therefore taking away the benefit that the Debtor received, and, at the same time, keeping the benefit that the Debtor gave them.

55.     Alternatively, a benefit was conferred upon SVE, Greg Richards, and Debbie Richards when they took the Racemine software without permission, which they admitted belonged to the Debtor.

56.     SVE, Greg Richards, and Debbie Richards knew that they were receiving a benefit when they took the Debtor's Racemine software, specifically because they later sold the software to IMAthlete.

57.     The circumstances of the Defendants' acts and conduct in taking the Racemine software from the Debtor after the Debtor paid $200,000 for it, are such that it would be inequitable if SVE, Greg Richards, and Debbie Richards did not give back to the Debtor's estate the funds that the Debtor paid under the Contract.

8

WHEREFORE, the Plaintiff, Deborah C. Menotte, Trustee in Bankruptcy for Forte Interactive, Inc., respectfully demands that this Court enter judgment in her favor and against Defendants, Greg Richards, Debbie Richards, and SVE, LLC, jointly and severally for unjust enrichment in the amount of at least two hundred thousand dollars ($200,000.00) or such other amounts as may be determined at trial, plus prejudgment interest and costs and award all other relief the Court deems just and proper.

## COUNT III - CONVERSION

### (Against SVE, Greg Richards, and Debbie Richards)

58.    The Plaintiff realleges paragraphs 1 through 43 as if fully set forth herein.

59.    The elements of a claim for conversion are as follows:

    a) The Defendant's unauthorized act:
    b) Deprives the Plaintiff of his property permanently or for an indefinite time; and
    c) The deprivation is inconsistent with Defendant's ownership interest in the property

60.    The Defendants, SVE, Greg Richards, and Debbie Richards, took the Debtor's Racemine software, including the customer list and information, which they admitted belonged to the Debtor, from the Debtor's server, thereby "shutting it down", according to the Defendants.

61.    The Defendants did not have permission or authorization to take the Debtor's Racemine software, including its customer list and information.

62.    After taking the Debtor's Racemine software from the Debtor's server, the Defendants, SVE, Greg Richards, and Debbie Richards, put it back onto SVE's server.

63.    All such property of the Debtor, including the Debtor's Racemine software and customer list and information, was taken from the Debtor by the Defendants as unlawful and unauthorized acts whereby all such acts did permanently deprive the Debtor of its property.

64.     In fact, the Defendants later sold the Racemine software and customer list and information [again] to Defendant, IMAthlete, which was aware that such property belonged to the Debtor, and which actually *signed an agreement not to use such software,* yet paid money to SVE for it.

65.     At the time that the Defendants, SVE, Greg Richards, and Debbie Richards took the Racemine software and customer list and information off of the Debtor's server, they had no rights or any possible ownership interest whatsoever in or to such property.

66.     The Racemine software and customer information, or its value, being the funds paid by the Debtor to SVE for the purchase of the software and the customer information, totaling at least $200,000.00, is the Debtor's property pursuant to 11 U.S.C. §541, which the Plaintiff has standing to recover.

67.     The Defendant's retention [and subsequent sale of] of the Estate's property and/or purchase money, deprives the Plaintiff, Deborah Menotte, Trustee in Bankruptcy for Forte Interactive, Inc., of her right to the Estate's interest in the property and/or purchase money and its value, and such deprivation is inconsistent with the Defendants' ownership interest therein.

WHEREFORE, Deborah C. Menotte, as Trustee in Bankruptcy for Forte Interactive, Inc., by and through undersigned counsel, respectfully requests that the Court enter a judgment against the Defendants, Greg Richards, Debbie Richards, and  SVE, LLC, jointly and severally, finding that the Defendant's retention [and subsequent sale of] the Estate's property and/or purchase money, valued at or totaling at least $200,000.00, deprives the Trustee of her right to property of the Estate or its value, and such deprivation is inconsistent with the Defendants' ownership interest therein, and granting a monetary award of damages in the amount of at least $200,000.00, and such other amounts as are determined at trial to compensate the Estate for the Debtor's loss of business,

income, and opportunity, and that the Court grant such other and further relief as the Court deems just and proper.

## COUNT IV
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER
## PURSUANT TO SECTION 548(A)(1)(B) OF THE BANKRUPTCY CODE

### (Against SVE and IMAthlete)

68.     Plaintiff restates and re-alleges paragraphs 1 through 43 as fully set forth therein.

69.     Pursuant to 11 U.S.C. §548(a)(1)(B) and/or 11 U.S.C. §544, a Trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years (under Section 548 of the Bankruptcy Code) before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

(B)     (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)     (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

70.     Further, pursuant to 11 U.S.C. §550, in a fraudulent transfer action commenced under Sections 544 and 548 of the Bankruptcy Code, the Trustee may recover, for the benefit of the estate, the property transferred or obligation incurred, or, if the Court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee, *i.e.*, any and all subsequent transferees.

71.     To the extent that there was a transfer of the Racemine software and customer information to SVE when SVE, Greg Richards, and Debbie Richards took the Racemine software and customer information from the Debtor, such [involuntary] transfer ("Transfer") constitutes a transfer of an interest in property of the Debtor and/or obligation incurred by the Debtor as set forth herein, which are avoidable under 11 U.S.C. §548(a)(1)(B) as constructively fraudulent.

72.     As set forth above, the Debtor did not receive reasonably equivalent value for the Transfer and/or obligation and at the time thereof, and the Debtor (i) was insolvent or became insolvent as a result thereof; (ii) was engaged or was about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed, that the Debtor would incur debts beyond its ability to pay as they came due.

73.     Indeed, the Debtor was insolvent in 2016 and remained so through the Petition Date.

74.     The insolvency of the Debtor is attributable to, among other things, various insider loans and loans to the insiders' *other* entities, which left the Debtor with unreasonably small capital for the operation of its business, and the inability of the Debtor to pay its debts as they became due.

75.     Specifically, as a result of various loans to insiders and their entities, over $1,000,000 of the Debtor's cash was beyond its reach for a period of over two years or more, from mid-2014 through mid-2016 leaving the Debtor with insufficient cash to operate its business.

76.     Upon information and belief, in 2016, in order to pay its bills and operating expenses, the Debtor borrowed on a credit instrument, similar to a line of credit, with American Express, incurring more debt.

77. Later, in early 2017, American Express declined to renew the Debtor's credit line, at which time, the Debtor was unable to borrow money to pay its creditors.

78. Additionally, the loss of one of the Debtor's most significant assets, the Racemine software, for which it had just paid over $200,000.00 and more than $100,000.00 for maintenance, rendered the Debtor insolvent in that its liabilities exceeded its assets.

79. Defendant, SVE, was the initial transferee or the entity for whose benefit the Transfer was made, and as a result, the Trustee is entitled to avoid and recover the Transfer or its value from SVE, under 11 U.S.C. §548(a)(1)(B) as a constructively fraudulent transfer.

80. Alternatively, the Defendant, IMAthlete, is the immediate or mediate (subsequent) transferee of the initial transferee for whose benefit the Transfer was made, and as a result, the Trustee is entitled to recover the property transferred, or its value, from Defendant, iamAthlete pursuant to 11 U.S.C. §548(a)(1)(B) and 11 U.S.C. §550(a)(2).

81. Therefore, in accordance with 11 U.S.C. §550(a), the recovery of property for the benefit of the Estate is authorized to the extent that the Transfer is avoided under 11 U.S.C. §548(a)(1)(B).

**WHEREFORE**, Plaintiff, Deborah C. Menotte, as Trustee in Bankruptcy for Forte Interactive, Inc., demands the entry of judgment against each of the Defendants, SVE, LLC and I AM Athlete, LLC, jointly and severally (a) determining that the Transfer to SVE, LLC of the Racemine software and the customer information was fraudulent and avoidable under 11 U.S.C. §548(a)(1)(B); (b) avoiding and recovering the Transfer and entering monetary judgment in favor of Plaintiff against Defendants, SVE, LLC, and I AM Athlete, LLC, jointly and severally, in the amount of at least $200,000.00, or in such amounts as are determined at trial, plus pre-judgment interest from the date of the Transfer and post-judgment interest, and costs of suit, all pursuant to

11 U.S.C. §550; (c) disallowing any claim that Defendants, SVE, LLC, and/or I AM Athlete, LLC may have against the Estate of the Debtor, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

**COUNT V**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER**
**PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE**
**AND SECTION 726.105(1)(B) OF THE FLORIDA STATUTES**

**(Against SVE and IMAthlete)**

82.     Plaintiff restates and re-alleges paragraphs 1 through 43 as fully set forth therein.

83.     Pursuant to 11 U.S.C. §544(b), the Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under §502 of this title or that is not allowable only under §502(e) of this title.

84.     Section 726.105(1)(b), Florida Statutes, provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (b) Without receiving reasonably equivalent in value in exchange for the transfer or obligation, and the debtor:
> >
> > > (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > >
> > > (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

85.     Further, pursuant to 11 U.S.C. §550, in a fraudulent transfer action commenced under Chapter 726 of the Florida Statutes, the Trustee may recover, for the benefit of the estate, the property transferred, or, if the Court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee, i.e., any and all subsequent transferees.

86.     During all relevant times, various creditors with allowable unsecured claims in this case could have avoided the Transfer under section 726.105(1)(b), Florida Statutes.

87.     The Transfer of the Racemine software and the customer list and information was made without the Debtor receiving reasonably equivalent value in exchange for the Transfer pursuant to §726.105(1)(b), Florida Statutes.

88.     At the time of the Transfer, the Debtor was engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transactions in which the Debtor was engaged.

89.     At the time of the Transfer, the Debtor had incurred debts beyond its ability to pay as they became due.

90.     As set forth above, the Debtor was otherwise insolvent at the time of the Transfer.

91.     Indeed, the Debtor was insolvent in 2016 and remained so through the Petition Date.

92.     The insolvency of the Debtor is attributable to, among other things, various insider loans and loans to the insiders' *other* entities, which left the Debtor with unreasonably small capital for the operation of its business, and the inability of the Debtor to pay its debts as they became due.

93.    Specifically, as a result of various loans to insiders and their entities, over $1,000,000 of the Debtor's cash was beyond its reach for a period of over two years or more, from mid-2014 through mid-2016 leaving the Debtor with insufficient cash to operate its business.

94.    Upon information and belief, in 2016, in order to pay its bills and operating expenses, the Debtor borrowed on a credit instrument, similar to a line of credit, with American Express, incurring more debt.

95.    Later, in early 2017, American Express declined to renew the Debtor's credit line, at which time, the Debtor was unable to borrow money to pay its creditors.

96.    Additionally, the loss of one of the Debtor's most significant assets, the Racemine software, for which it had just paid over $200,000.00 and more than $100,000.00 for maintenance, rendered the Debtor insolvent in that its liabilities exceeded its assets.

97.    As a result of the Transfer, the Trustee and the Estate have been damaged pursuant to 11 U.S.C. §544(b) for the total value of the Transfer, which was at least $200,000.00.

98.    Defendant, SVE, LLC, was the initial transferee or the entity for whose benefit the Transfer was made, and as a result, the Trustee is entitled to avoid and recover the Transfer from SVE, LLC under 11 U.S.C. §544 of the Bankruptcy Code and §726.105(1)(b) of the Florida Statutes as constructively fraudulent transfers and/or obligations.

99.    Defendant, IMAthlete, is the immediate or mediate (subsequent) transferee of the initial transferee for whose benefit the Transfer was made, and as a result, the Trustee is entitled to recover the Transfer as referenced above from Defendants pursuant to §726.105(1)(b) of the Florida Statutes and 11 U.S.C. §550(a)(2).

100.    Therefore, in accordance with 11 U.S.C. §550(a), the recovery of property for the benefit of the Estate is authorized to the extent that the respective Transfer are avoided under §726.105(1)(b) of the Florida Statutes.

**WHEREFORE**, Plaintiff, Deborah C. Menotte, as Trustee in Bankruptcy for Forte Interactive, Inc., demands the entry of judgment against each of the Defendants, SVE, LLC and I AM Athlete, LLC, jointly and severally (a) determining that the Transfer to SVE, LLC of the Racemine software and the customer information was fraudulent and avoidable under under 11 U.S.C. §726.105(1)(b), Fla. Stats.; (b) avoiding and recovering the Transfer and entering monetary judgment in favor of Plaintiff against Defendants, SVE, LLC, and I AM Athlete, LLC, jointly and severally, in the amount of at least $200,000.00, or in such amounts as are determined at trial, plus pre-judgment interest from the date of the Transfer and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendants, SVE, LLC and/or I AM Athlete, LLC, may have against the Estate of the Debtor, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

**COUNT VI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER**
**PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE**
**AND SECTION 726.106(1) OF THE FLORIDA STATUTES**

**(Against SVE and IMAthlete)**

101.    Plaintiff restates and re-alleges paragraphs 1 through 43 as fully set forth therein.

102.    Pursuant to 11 U.S.C. §544(b), the Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under §502 of Title 11 or that is not allowable only under §502(e) of this title.

103.    Section 726.106(1), Florida Statutes, provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

104.    During all relevant times, various creditors with allowable unsecured claims in this case could have avoided the Transfer under section 726.106(1), Florida Statutes.

105.    The Transfer was made and incurred without the Debtor receiving reasonably equivalent value in exchange for such transfer and/or obligation pursuant to §726.106(1), Florida Statutes.

106.    As set forth above, at the time of the Transfer, the Debtor was insolvent or became insolvent as a result of the Transfer.

107.    Indeed, the Debtor was insolvent in 2016 and remained so through the Petition Date.

108.    The insolvency of the Debtor is attributable to, among other things, various insider loans and loans to the insiders' *other* entities, which left the Debtor with unreasonably small capital for the operation of its business, and the inability of the Debtor to pay its debts as they became due.

109.    Specifically, as a result of various loans to insiders and their entities, over $1,000,000 of the Debtor's cash was beyond its reach for a period of over two years or more, from mid-2014 through mid-2016 leaving the Debtor with insufficient cash to operate its business.

110.    Upon information and belief, in 2016, in order to pay its bills and operating expenses, the Debtor borrowed on a credit instrument, similar to a line of credit, with American Express, incurring more debt.

111.    Later, in early 2017, American Express declined to renew the Debtor's credit line, at which time, the Debtor was unable to borrow money to pay its creditors.

112.    Additionally, the loss of one of the Debtor's most significant assets, the Racemine software, for which it had just paid over $200,000.00 and more than $100,000.00 for maintenance, rendered the Debtor insolvent in that its liabilities exceeded its assets.

113.    At the time of the Transfer, the Debtor was indebted to creditors in an amount in excess of the Transfer.

114.    As a result of the Transfer, the Trustee has been damaged pursuant to 11 U.S.C. § 544(b) for the total value of the Transfer.

115.    Defendant, SVE, LLC, was the initial transferee or the entity for whose benefit the Transfer was made or obligation incurred, and as a result, the Trustee (Plaintiff) is entitled to recover the Transfer pursuant to 11 U.S.C. § 550(a)(1).

116.    Defendant, IMAthlete, is the immediate or mediate (subsequent) transferee of the initial transferee for whose benefit the Transfer was made or obligation incurred, and as a result, the Trustee is entitled to recover the Transfer as referenced above from Defendants pursuant to §726.106(1), Florida Statutes  and 11 U.S.C. §550(a)(2).

117.    As a result of the above, the Trustee can avoid the Transfer pursuant to Sections 544 of the Bankruptcy Code and Chapter 726 of the Florida Statutes, and recover the value thereof from SVE, LLC and IMAthlete, jointly and severally, for the benefit of the estate pursuant to Section 550 of the Bankruptcy Code.

WHEREFORE, Plaintiff, Deborah C. Menotte, as Trustee in Bankruptcy for Forte Interactive, Inc., demands the entry of judgment against Defendants SVE, LLC and I AM Athlete, LLC, jointly and severally (a) determining that the Transfer to SVE, LLC of the Racemine software and the customer information was fraudulent and avoidable under 11 U.S.C. §726.106(1), Fla. Stats.; (b) avoiding and recovering the Transfer and entering monetary judgment in favor of Plaintiff against Defendants, SVE, LLC, and I AM Athlete, LLC, jointly and severally, in the amount of at least $200,000.00, or in such amounts as are determined at trial, plus pre-judgment interest from the date of the Transfer and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendants SVE, LLC and/or I AM Athlete, LLC may have against the Estate of the Debtor, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

## COUNT VII
## BREACH OF CONTRACT (NON-DISCLOSURE AGREEMENT) AND FOR ENFORCEMENT OF NON-DISCLOSURE AGREEMENT

### (Against IMAthlete)

118.    Plaintiff restates and re-alleges paragraphs 1 through 43 as fully set forth therein.

119.    The Debtor and the Defendant, IMAthlete, entered into a Mutual Non-Disclosure Agreement on December 5, 2017.

120.    The Mutual Non-Disclosure Agreement obligated IMAthlete not to make any use whatsoever at any time of any information disclosed to it by the Debtor.

121.    After the execution of the Mutual Non-Disclosure Agreement IMAthlete has used the Debtor's Racemine software, in breach of the Mutual Non-Disclosure Agreement.

122.     As a result of the breach, the Debtor and its estate have suffered damages and irreparable harm, not only from the Debtor's loss of its asset and its business and opportunity, but from IMAthlete's unfair competition with the Debtor, and the Plaintiff is entitled to be indemnified for such loss and harm, plus attorneys fees in connection with such breach of and the enforcement of the Mutual Non-Disclosure Agreement.

**WHEREFORE**, Plaintiff, Deborah C. Menotte, as Trustee in Bankruptcy for Forte Interactive, Inc., respectfully requests that this Court enter an award against Defendant, I AM Athlete, LLC for compensatory and consequential damages, including, without limitation, at least $200,000.00 for the value of the Racemine software and customer information, and such other amounts as are determined at trial to compensate the Estate for the Debtor's loss of business and opportunity and I AM Athlete, LLC's unfair competition with the Debtor, plus pre-judgment interest, costs of this action, attorney's fees; and such other relief as this Court may deem just and proper.

Dated:  February 5, 2020

Respectfully Submitted,

**GREENSPOON MARDER LLP**

*/s/ Rilyn A. Carnahan*
MICHAEL R. BAKST, ESQ.
Florida Bar No.: 866377
RILYN A. CARNAHAN, ESQ.
Florida Bar Number: 614831
Attorneys for the Trustee
CityPlace Tower
525 Okeechobee Blvd., Suite 900
West Palm Beach, FL 33401
T:  (561) 838-4557
F:  (561) 514-3457
Email: rilyn.carnahan@gmlaw.com

**LETTER OF INTENT**

A. Clay Williams, CEO
Forte Interactive, Inc
313 Datura St, Ste 300
West Palm Beach, FL 33401

Dear Greg Richards,

This Letter of Intent supersedes and replaces the original Letter of Intent dated executed on August 12, 2016.

The intent of this Letter is to provide a written expression of the mutual interest of the following Parties:

Buyer: Forte Interactive, Inc, DBA RacePartner.com

And

Seller: SVE LLC

in which Buyer would purchase the business, materials, services or matters set forth in this Letter from Seller. This Letter also outlines some of the terms and conditions that a future agreement would include, as well as the exchange of information and documents that should take place in advance of the future agreement. The future agreement would require further documentation and approvals and the preparation of a definitive agreement which would set forth the material terms and a commitment from the Buyer to purchase and the Seller to sell.

1. **Prospective Transaction**

The transaction which the Parties have expressed a mutual interest in, involves: the transfer of all assets related to the "Racemine Registration" and "Racemine Results" publication products, including all intellectual property, trademarks, copyrights, customers, goodwill and assignment of all existing customer contracts.

Buyer Initials: _____    Seller Initials: _____

EXHIBIT "A"

## 2.  Purchase Terms

In consideration for entering into the Prospective Transaction Seller shall receive a 10% stake in the entity formed as a result of the Prospective Transaction, and a onetime payment of $125,000.

An entity will be formed that will combine the assets of the Prospective Transaction with the existing RacePartner product assets.  Buyer will retain a 90% stake in the entity and Seller will receive a 10% stake in the entity.  The entity shall make distributions to the shareholders of operating profits less a reasonable reserve on a quarterly basis.  Seller's quarterly distribution shall be not less than $25,000 for each quarter for the first sixteen (16) operating quarters.

As a performance bonus, Seller shall be eligible to receive additional ownership interest in the combined entity.  The additional ownership interest would be granted on 1/1/2018 based on the number of net new registrations added in 2017 from SVE relationships or referrals over and above the baseline of 60,000 registrations currently processed on the Racemine platform annually.  The bonus shall be awarded whether or not those new registration are boarded on Racemine or RacePartner platforms.  The bonus would be as follows:

- If 25,000 net new registrations the bonus will be 2.5%, or
- if 50,000 net new registrations the bonus will be 5%, or
- if 60,000 net new registrations the bonus will be 7.5%

## 3.  Deposit

Buyer shall provide a deposit of $50,000 payable to SVE LLC to be held in escrow and applied to the onetime payment of $125,000 such that the Buyer shall pay Seller only $75,000 at closing.

## 4.  Liabilities of Seller

Buyer would not assume any liabilities or obligations of Seller, except for the ongoing operational expenses of the products.  Seller would remain liable for any (known or unknown) liabilities or obligations not expressly assumed by Buyer and which arose before the consummation of the final or definitive agreement, and shall pay and discharge all known liabilities and obligations prior to closing.

## 5.  Due Diligence

Buyer will be entitled to inspect and analyze the Seller's assets, business and operations, including its books and records, customer order, liabilities and prospects, as they relate to the assets involved in the Prospective Transaction, until the closing, or termination, of this Letter of Intent.  Seller will provide all information requested by Buyer and Buyer agrees to execute a Confidentiality Agreement and to not contact Seller's customers or suppliers unless authorized by Seller.

## 6.  Contingencies

Before a final agreement can be made, Buyer must be satisfied with the due diligence review and information and documents provided by Seller as well as an agreement on the terms of the Definitive Agreement.

Buyer Initials: _____     Seller Initials: _____

**7. Definitive Agreement**

The Definitive Agreement will be structured as a purchase and sale of assets and will include customary covenants, conditions and warranties.

**8. Non-Binding Agreement**

Except for the paragraph entitled "Public Announcement and Confidentiality Agreement", the provisions in this Letter of Intent are for informational purposes only and are nonbinding on all Parties. The Prospective Transaction requires further negotiation and documentation, including preparing and executing a final agreement. This letter does not require either Party to proceed to the completion of a binding final agreement. The Parties shall not be contractually bound to the sale, purchase or transfer listed above unless and until they enter into a formal, written final agreement, which must be in form and content satisfactory to each Party and to each Party's legal counsel, in their sole discretion.

**9. Exclusivity**

The Parties agree to Exclusivity for a period of 60 days from the date the last signature is affixed hereto. Consideration for an exclusivity agreement is the time and expense involved in drafting this Letter of Intent and conducting the due diligence review.

**10. Public Announcements and Confidentiality Agreement**

All Parties hereby agree not to release any information to the public with regards to this letter or any potential agreement without the separate written consent of all Parties involved. All Parties agree that the terms of this letter of intent and any negotiations shall remain confidential between the Parties and their legal representation.

**11. Authority to Enter Letter of Intent**

The Parties signing this letter affirm they are an authorized representative of their respective companies and have authority to enter into this Letter of Intent.

**12. Closing, Termination of Letter**

Closing shall occur no later than 30 days from the date the last signature is affixed hereto unless mutually extended by the Parties. The Letter of Intent terminates if Closing does not occur or has not been extended or if either Party provides written notice of termination. If the Letter terminates, the paragraph entitled "Public Announcements and Confidentiality Agreement" survives termination and continues to bind the Parties, as does any separately executed Confidentiality Agreement, and all deposits paid to Seller by Buyer shall be returned to Buyer within seven days of the termination of this letter.

Buyer Initials: _____   Seller Initials: _____

**13. Expenses Associated with this Letter of Intent and Due Diligence**

The Parties agree to bear their own expenses, including attorney and professional fees associated with any due diligence or any other matter associated with this Prospective Transaction.

**14. Governing Law**

This Letter shall be governed by the laws of the State of Florida.

Sincerely,

Agreed to by Buyer:

_____          Date: _____
Forte Interactive, Inc. dba RacePartner

And Accepted and Agreed to by Seller

_____          Date: 9-28-2016
SVE LLC     GREG RICHARDS

Buyer Initials: _____    Seller Initials: _____

DocuSign Envelope ID: 77400110-794B-4364-BDFC-7F3783625EBB



## Mutual Non-Disclosure Agreement

THIS NONDISCLOSURE AGREEMENT is made and entered into as of 12/5/2017 , between I Am Athlete, LLC at the address 2800 28th Street, Suite 385, Santa Monica, CA 90405 and Forte Interactive Inc. at the address 313 Datura St WPBch FL 33401

Each party (the "Receiving Party", "Recipient") understands that the other party (the "Disclosing Party", "Discloser") has disclosed or may disclose information relating to business opportunities of mutual interest, including, without limitation, names, contact information and expertise of employees, consultants and company representatives, know-how, formulas, processes, ideas, and other technical, business, financial, customer and product development plans, forecasts, strategies and information), which to the extent previously, presently, or subsequently disclosed to the Receiving Party is hereinafter referred to as "Proprietary Information" of the Disclosing Party.

"Proprietary Information" means any information disclosed by the Disclosing Party to the Receiving Party either directly or indirectly in writing, orally or by inspection of tangible objects, including without limitation, documents prototypes and samples. Proprietary Information may also include information disclosed to either Party by third parties. Proprietary Information shall not, however, include any information which the Receiving Party can establish (1) was publicly known and made generally available in the public domain prior to the time of disclosure to Recipient by Discloser; or (2) becomes publicly known and made generally available after disclosure to Recipient by Discloser through no action or inaction of Recipient. Notwithstanding the foregoing, all names, contact information and expertise of Disclosing Party's field representatives, street teamers and consultants shall remain Proprietary Information unless specifically released in writing by Discloser.

In consideration of the parties' discussions and any access the Receiving Party may have to Proprietary Information of the Disclosing Party, the Receiving Party hereby agrees as follows:

1. <u>Use of Proprietary Information</u>  The Receiving Party agrees:

    a.  to hold the Disclosing Party's Proprietary Information in confidence and to take reasonable precautions to protect such Proprietary Information (including, without limitation, all precautions the Receiving Party employs with respect to its confidential materials),

    b.  to not divulge any such Proprietary Information or any information derived therefrom to any third person, subject to the conditions stated below,

    c.  not to make any use whatsoever at any time of such Proprietary Information except to evaluate internally whether to enter into the currently contemplated agreement with the Disclosing Party or to fulfill mutually pre-determined business objectives; and

    d.  not to copy or reverse engineer any such Proprietary Information.

Any employee or consultant given access to any such Proprietary Information must have a legitimate "need to know" and shall be similarly bound in writing. Without granting any right or license, the Disclosing Party agrees that the foregoing clauses (i), (ii), (iii) and (iv) shall not apply to any information that the Receiving Party can document (1) is (or through no improper action or inaction by the Receiving Party or any affiliate, agent, consultant or employee) generally available to the public, or (2) was in its possession or known by it prior to receipt from the Disclosing Party, or (3) was rightfully disclosed to it by a third party without restriction, provided the Receiving Party complies with any restrictions imposed by the third party. The Receiving Party may make disclosures required by court order, provided the Receiving Party uses reasonable efforts to limit disclosure and to obtain confidential treatment or a protective order and has allowed the Disclosing Party to participate in the proceeding.

EXHIBIT "B"

DocuSign Envelope ID: 77400110-794B-4364-BDFC-7F3783625EBB



2.    <u>Return of Proprietary Information</u>  Immediately upon (i) the decision by either party not to enter into the agreement contemplated by paragraph 1, or (ii) a request by the Disclosing Party at any time (which will be effective if actually received or three days after mailed first class postage prepaid to the Receiving Party), the Receiving Party will turn over to the Disclosing Party all Proprietary Information of the Disclosing Party and all documents or media containing any such Proprietary Information and any and all copies or extracts thereof.

3.    <u>Miscellaneous</u>  The Receiving Party acknowledges and agrees that due to the unique nature of the Disclosing Party's Proprietary Information, there can be no adequate remedy at law for any breach of its obligations hereunder, that any such breach may allow the Receiving Party or third parties to unfairly compete with the Disclosing Party resulting in irreparable harm to the Disclosing Party, and therefore, that upon any such breach or any threat thereof, the Disclosing Party shall be entitled to appropriate equitable relief in addition to whatever remedies it might have at law and to be indemnified by the Receiving Party from any loss or harm, including, without limitation, attorneys' fees, in connection with any breach or enforcement of the Receiving Party's obligations hereunder or the unauthorized use or release of any such Proprietary Information. The Receiving Party will notify the Disclosing Party in writing immediately upon the occurrence of any such unauthorized release or other breach of which it is aware.  In the event that any of the provisions of this Agreement shall be held by a court or other tribunal of competent jurisdiction to be illegal, invalid or unenforceable, such provisions shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect.  This Agreement shall be governed by the law of the State of California without regard to the conflicts of law provisions thereof.  This Agreement supersedes all prior discussions and writing and constitutes the entire agreement between the parties with respect to the subject matter hereof. The prevailing party in any action to enforce this Agreement shall be entitled to costs and attorneys' fees.  No waiver or modification of this Agreement will be binding upon either party unless made in writing and signed by a duly authorized representative of such party and no failure or delay in enforcing any right will be deemed a waiver. This Agreement shall be construed as to its fair meaning and not strictly for or against either party.

**I AM ATHLETE, LLC**

By: _____

(Authorized Signature and Date)

Name:  Jeff Matlow

Title:  CEO, I AM ATHLETE, LLC

Forte Interactive Inc

By: _____

(Authorized Signature and Date)

Name:  Kirk St Johns

Title:  CEO